PAUL A. BONIN, Judge.
 

 |, The trial court denied class certification and the named plaintiffs in these consolidated actions have appealed. Finding no abuse of discretion by the trial court, as set forth in the reasons which follow, we affirm.
 

 I
 

 Over the course of more than forty years, industrial property located in Harvey, Louisiana, near residential neighbor
 
 *580
 
 hoods was used for oilfield pipe and equipment-cleaning operations. The owners of the property leased various parcels to various businesses at various times and for various periods of time. The pipe was owned by several oil companies, which used several transportation companies to deliver the pipe to the various operations. The named defendants
 
 [1]
 
 are the pipe cleaning businesses, the property owners and lessees, and the oil companies. The |2pipe cleaning operations conducted on the property are fully described in
 
 Grefer v. Alpha Technical,
 
 02-1237 (La.App. 4 Cir. 3/31/05), 901 So.2d 1117.
 
 [2]
 

 The operations can be described generally as the mechanical cleaning and reaming of the inside of oilfield pipe to remove scale or crust that builds up on the interior of the tubing, thus returning the cleaned pipe to its original diameter. The scale, formed from natural elements, gradually clogs the pipes that are inserted deep into the ground during the course of petroleum production. Since the early 1900’s the oil industry has known that the underground water produced in conjunction with oilfield hydrocarbons leached certain mineral salts from the earth’s crust and then carried those mineral salts in solution up the tubing toward the surface. Change in pressure and temperature caused the mineral salts to precipitate out of solution and form a scale or crust on the interior of the tubing. The built-up scale eventually constricted and slowed the flow path of the oil and gas; at that point, the oil company extracted tubing and transported it to the pipe yard for the cleaning contractor to ream the pipe. The chemical composition of the scale was barium sulfate, later identified as radium sulfate, and other material determined to be radioactive, with varying half-lives (time for half of the atoms of a radioactive substance to decay), called NORM or TERM.
 
 [3]
 

 The acronym NORM, used by the defendants, stands for “naturally occurring radioactive material.” The oil industry tried to establish protocols for |smonitoring and set criteria for dangerous NORM levels. One defendant, ITCO, built a Controlled Environmental Cleaning unit to clean NORM-contaminated pipe.
 
 See, generally,
 
 James R. Cox,
 
 Naturally Occurring Radioactive Materials in the Oil Field: Changing the NORM,
 
 67 Tul. L.R. 1197
 
 *581
 
 (1993).
 
 [4]
 

 The plaintiffs define the proposed class as follows:
 

 All persons, firms or other entities whose person or property was located within one mile of the outer boundary of “The Property.” And was exposed to any radioactive, hazardous, and/or toxic materials generated, stored or released as a result of operations conducted by one or more defendants on “The Property,” from 1946 through the present date.
 

 They allege that over those years, and hidden from them, “toxic dust”
 
 [5]
 
 (NORM/ TERM) was deposited in their neighborhood. The affected neighborhood was defined to be a tract of land adjoining the eastern boundary of the industrial property to a distance of about one mile. The plaintiffs attribute their various diseases and illnesses, including prenatal complications, various types of cancer, neurological disorders, impairment of kidney function, impairment of liver function, to the wrongful release of toxic dust by the defendants. The class action seeks damages and mandatory injunctive relief, including reparation of the industrial property.
 

 The trial judge delegated a special master, appointed pursuant to the provisions of La. R.S. 13:4165 A, to conduct an evi-dentiary hearing on the class certification issue. The special master recommended against certifying the class. |4After a contradictory hearing, the trial court denied class certification. From this judgment the plaintiffs appeal. A judgment denying class certification is an appealable judgment. La. C.C.P. art. 592 A(3)(b).
 
 [6]
 

 II
 

 The standard of review for class certification is bifurcated: factual findings are reviewed under the manifest error/clearly wrong standard, but the trial court’s judgment on whether to certify the class is reviewed by the abuse of discretion standard.
 
 Brooks v. Union Pacific Railroad Company,
 
 08-2035, p. 10 (La.5/22/09), 13 So.3d 546, 554;
 
 Chalona v. Louisiana Citizens Property Ins. Corp.,
 
 08-0257, pp. 4-5 (La.App. 4 Cir. 6/11/08), 3 So.3d 494, 500.
 

 These two standards of review correspond with the two-step process for determining whether to certify a class action.
 
 First, a trial court must find a factual basis exists to certify an action as a class action. Second, the court must exercise its discretion in deciding if certification is appropriate,
 
 [emphasis added]
 

 Galjour v. Bank One Equity Investors-Bidco, Inc.,
 
 05-1360, p. 7 (La.App. 4 Cir. 6/21/06), 935 So.2d 716, 722, citing
 
 Singleton v. Northfield Ins. Co.,
 
 01-0447, p. 7 (La.App. 1 Cir. 5/15/02), 826 So.2d 55, 61.
 

 
 *582
 
 The Louisiana Supreme Court recently stated, in
 
 Brooks,
 
 08-2035 at p. 10, 13 So.3d at 554:
 

 The determination of whether a class action meets the requirements imposed by law involves a rigorous analysis. The trial court “must evaluate, quantify and weigh [the relevant factors] to determine to what extent the class action would in each instance promote or detract from the goals of effectuating substantive law, Isjudicial efficiency, and individual fairness” [citation omitted]. In so doing, “the trial court must actively inquire into every aspect of the case and should not hesitate to require showings beyond the pleadings.” [citations omitted]
 

 While any error to be made in deciding class action issues should be in favor of, not against, maintenance of the class action,
 
 McCastle v. Rollins Environmental Services of Louisiana, Inc.,
 
 456 So.2d 612, 620 (La.1984), nevertheless,
 

 Louisiana trial courts are afforded broad discretion in determining the class certification issues, and have wide latitude in considerations involving policy matters, and those requiring a preliminary analysis of the facts, [citation omitted]
 

 Davis,
 
 02-0942 at p. 6, 844 So.2d at 249.
 

 The defendants argue that the trial court’s findings were correct, and that we must defer to the trial court’s findings absent manifest error, and defer to the trial court’s decision regarding certification absent abuse of discretion.
 
 See Banks v. New York Life Ins. Co.,
 
 98-0551 (La.7/2/99), 737 So.2d 1275;
 
 Stobart v. State Dept. of Transportation and Development,
 
 617 So.2d 880 (La.1993);
 
 Rosell v. ESCO,
 
 549 So.2d 840 (La.1989).
 

 We are especially mindful that a class action is a procedural tool, wherein substantive facts are not considered when deciding the issue of certification.
 
 Andry v. Murphy Oil, U.S.A., Inc.,
 
 97-0793, pp. 2-3 (La.App. 4 Cir.1998), 710 So.2d 1126, 1129.
 
 See also Thomas v. Mobil Oil Corp.,
 
 08-0541, p. 18 (La.App. 4 Cir. 3/31/09), 14 So.3d 7 at 18-19, (Bonin, J., dissenting).
 

 | nThe central issue on appeal is whether the trial court abused its discretion when it found that the plaintiffs failed to establish the requirements for certification pursuant to La. C.C.P. art. 591,
 
 [7]
 
 which provides in pertinent part:
 

 
 *583
 
 A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
 

 (1) The class is so numerous that join-der of all members is impracticable.
 

 (2) There are questions of law and fact common to the class.
 

 (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
 

 (4) The representative parties will fairly and adequately protect the interest of the class.
 

 (5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of conclusiveness of any judgment that may be rendered in the case.
 

 B.
 
 An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied,
 
 [emphasis added]
 

 These prerequisites are generally known as numerosity, commonality, typicality, adequacy, and identifiability (class definition). Louisiana procedural law requires that a class action be certified only if all five requirements are present. La. C.C.P. art. 591 A.
 
 See also Davis v. American Home Products Corp.,
 
 02-0942, p. 5 (La. App. 4 Cir. 3/26/03), 844 So.2d 242, 249.
 

 |7Our Supreme Court in
 
 Ford v. Murphy Oil U.S.A., Inc.,
 
 96-2913 (La.9/9/97), 703 So.2d 542, explained the historical development of the Louisiana class action:
 

 Early Louisiana class action jurisprudence recognized the stringent common interest requirements of the original Rule 23 “true” class action, although the tests employed by the circuits differed. We first interpreted this provision in
 
 Stevens v. Board of Trustees of Police Pension Fund,
 
 309 So.2d 144 (La.1975). In
 
 Stevens,
 
 we held that the fact that different recoveries are sought, based upon the same factual transaction and same legal relationship, was not intended to defeat a class action (citation omitted). However we explained that ... [the legislature] intended that there be a relationship between the claims greater than simply that of sharing a common question of law or fact.
 
 Id.
 
 at 150.
 

 Ford,
 
 703 So.2d at 546.
 

 To this effect, “the trial court must actively inquire into every aspect of the case and should not hesitate to require showings beyond the pleadings.” (citing
 
 McCastle
 
 and
 
 Stevens).
 
 The
 
 Brooks
 
 Court, differentiating the two standards of review for factual findings and the ultimate decision of the trial court to grant certification, stated:
 

 Implicit in this deference] [to certification decisions] ... is recognition of the
 
 essentially factual basis of the certification inquiry
 
 [emphasis added] and of the district court’s inherent power to manage and control pending litigation, [citations omitted]
 

 Brooks,
 
 08-2035 at p. 11, 13 So.3d at 554.
 

 Ill
 

 Turning now to the instant case, we apply the manifest error/clearly wrong standard to our review of the criteria for certification.
 

 Numerosity.
 
 The trial court found that the plaintiffs failed to prove numerosity. This court has defined numerosity as follows:
 

 |sThe first prerequisite to class certification is that the class must be so numerous that joinder of all members is impracticable. La.Code Civ. Proc. Art. 591(A)(1). The determination of numer-osity is based in part upon the number of putative class members, but is also
 
 *584
 
 based upon considerations of judicial economy in avoiding a multiplicity of lawsuits, financial resources of class members, and the size of the individual claims.
 

 Husband v. Tenet Healthsystems Memorial Medical Center, Inc.,
 
 08-1527, p. 8 (La.App. 4 Cir. 8/12/09), 16 So.3d 1220 at 1228;
 
 Chalona,
 
 08-0257 at p. 6, 3 So.3d at 500-01, 503. The burden is on the plain-tifi/movant to “make a prima facie showing that a definable group of aggrieved persons exist [sic] and that the class is so numerous that joinder is impractical.”
 
 Johnson v. Orleans Parish School Board,
 
 00-0825-0828, p. 7 (La.App. 4 Cir. 6/27/01), 790 So.2d 734, 741. No number automatically makes joinder impracticable; rather, the determination is based on the facts and circumstances of each case.
 
 Chiarella v. Sprint Spectrum LP,
 
 04-0133, p. 19 (La.App. 4 Cir. 11/17/05), 921 So.2d 106, 119.
 

 In support of its refusal to certify the instant class because the plaintiffs failed to establish numerosity,
 
 [8]
 
 the trial court stated, “In the case of a mass tort, this burden of plausibility requires some evidence of a causal link between the incident and the injuries or damages claimed by sufficiently numerous class members,” citing
 
 Hampton v. Illinois Cent. R.R. Co.,
 
 98-0430 (La.App. 1 Cir. 4/1/99), 730 So.2d 1091. The judgment further denies numerosity “because so many potential class members have already opted out. Citing other lawsuits already filed by 3,748 individuals, the court stated, “it [is] impossible for Plaintiffs to establish numerosity,” citing three additional lawsuits:
 
 Earl Adams, Jr. v. Chevron U.S.A. Inc.,
 
 No. 02-19308, Division D of Civil District Court for Orleans Parish;
 
 Dottie Adams v. Joseph Gre-fer,
 
 No. 524-278, Division K, 24th Judicial District Court for Jefferson Parish, and
 
 Warren Lester v. ExxonMobil Corp.,
 
 02-19657, Division N(8) of Civil District Court for Orleans Parish.
 

 In this case, the trial court observed, the fact that significant numbers of residents or potential class members had opted out of the class made the establishment of numerosity impossible. Specifically, the judgment stated,
 

 Plaintiffs cite no credible evidence to support their proposed class definition, which purports to extend to all persons residing within, visiting, or even travel-ling through, a one-mile radius of the outer boundary of the site identified by plaintiffs between 1946 and 1992. Instead, they argue only that thousands of people resided within the one-mile radius over the relevant time period. This bit of information would be relevant only if plaintiffs could make a prima facie showing that radioactive materials from pipe scale had actually been found in soils or homes distributed in a one-mile radius. But plaintiffs have not made this showing. They have no evidence whatsoever of actual contamination.
 

 The trial court received evidence that the testing of residences in the suspect area revealed no evidence of radioactivity. The plaintiffs’ expert witness from the Louisiana Department of Environmental Quality failed to persuade the trial court that numerous residents were affected by toxicity from the defendants’ sites. The number of potential class members as estimated by plaintiffs themselves was between 2,000 and 4,000; however, of that
 
 *585
 
 number 3,748 have opted out, according to the trial court.
 

 Opting out of a class before it is certified to exist is premature; the classification is itself provisional, capable of being changed by the trial court as its procedural efficacy evolves. Accordingly, the argument regarding opting out has no effect on a certification of the class.
 
 See
 
 La. C.C.P. art. 592 A(3)(c), B(2)(b), |inand B(2)(c).
 
 [9]
 
 As plaintiffs in their brief argue, it is impossible to opt out of a class that does not yet exist. Hence, the trial court erroneously included as a reason to deny numerosity the argument that a large number of putative plaintiffs would opt out or had already filed claims, thus opting out.
 

 In our evaluation of the correctness
 
 vel non
 
 of the trial court’s rejection of the numerosity criterion, we review the extensive evidence offered as expert testimony and tests regarding the plaintiffs, the property, and the effect of NORM. The trial judge has much discretion in determining whether the qualifications of a learned person will assist the court in its fact finding function.
 
 Cheairs v. State ex rel. DOTD,
 
 03-680, p. 7 (La.12/3/03), 861 So.2d 536, 540-41;
 
 Rosell,
 
 549 So.2d at 844;
 
 Katner v.
 
 Katner; p. 3 (La.App. 4 Cir. 12/23/09), 28 So.3d 566. “The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound.”
 
 Lasyone v. Kansas City Southern Railroad,
 
 00-2628, p. 13 (La.4/3/01), 786 So.2d 682, 693.
 
 See also Beaucoudray v. Walsh,
 
 07-0818, pp. 13-14 (La.App. 4 Cir. 3/12/09), 9 So.3d 916, 924. The trial court was not clearly erroneous in finding the expert reports and testimony of Drs. Resnikoff, Williams,
 
 [10]
 
 and Biggs to be insufficient to establish the geographic elements of potential harmful exposures to the class.
 

 The Louisiana Supreme Court in
 
 Adams v. Rhodia, Inc.,
 
 07-2110, pp. 10-11 (La.5/21/08), 983 So.2d 798, 806-07, stated:
 

 _J_UWhere the findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the findings of fact. Indeed, whether the fact finder’s determination is based on its decision to credit the testimony of one of two witnesses, that finding can virtually never be manifestly erroneous.
 

 See also Cotton v. Delta Queen Steamboat Co., Inc.,
 
 2009-CA-0736, p. 7 (La.App. 4 Cir. 1/6/2010), — So.3d-.
 

 The plaintiffs contend, however, that until there is a certified class in existence, it cannot be “opted out of,” and there was no testimony, live or by affidavit, showing an intention by any putative class member to opt out.
 

 We find that the trial court was manifestly erroneous in its finding that the plaintiffs failed to satisfy the numerosity requirement.
 

 Commonality.
 
 This court has defined commonality as follows:
 

 
 *586
 
 A showing of commonality of questions of law and fact among the class is the second prerequisite in certifying the class. The test for commonality requires only that there be at least one issue the resolution of which will affect all or a significant number of putative class members.
 

 Watters v. Dept. of Social Serv.,
 
 05-0324, p. 15 (La.App. 4 Cir. 4/19/06), 929 So.2d 267, 278;
 
 Oliver v. Orleans Parish School Board,
 
 2009-CA-0489, p. 5 (La.App. 4 Cir. 11/12/09), 25 So.Sd 189, 198. The trial court in the instant case stated, “[t]here is no question of law or fact common to the class.... [T]here are no diseases that all — or even most — of the putative class members claim.” Citing conclusions of other states’ courts and federal courts, the trial court rejected the criterion of commonality among the putative class members at bar.
 

 However, definitions must evolve from concrete events, occurrences, real people, and specific places and facts, not mere nuance and speculation. For instance, the
 
 McCastle
 
 plaintiffs alleged 129 discrete acts over an eleven-month | ^period causing their specific and limited injuries, but there was only one source of odors and fumes.
 
 Ford,
 
 703 So.2d at 548. In
 
 Ford,
 
 as in the instant case, the court noted that,
 

 far from offering the same facts, each class member will necessarily have to offer different facts to establish that certain defendants’ emissions, either individually or in combination, caused them specific damages on yet unspecified dates (which dates may run into the hundreds or even thousands.) The causation issue is even more complicated considering the widely divergent types of personal, property and business damages claimed and considering each plaintiffs’[sic] unique habits, exposures, length of exposures, medications, medical conditions, employment, and location of residence or business. In addition, each plaintiff will have to prove that the specific harm he suffered surpassed the level of inconvenience that is tolerated under C.C. art. 668. By the very nature of the claims that have been made, the length of time involved, and the vast geographical area in which the class members live, the degree of inconvenience or damage suffered will vary greatly as to the individual plaintiffs.... There appear to be far too many individual liability issues which could not be tried separately.
 

 Id.
 
 at 549.
 

 The trial court had a factual scenario in the instant case that presented a breadth of times, durations, and various sources and intensities of exposures during nearly half a century among the plaintiffs, together with a wide variety of alleged medical complaints and conditions. The court stated:
 

 [T]here is no controlling issue subject to proof on a class-wide basis. The differences in amounts and lengths of exposure, the personal history, habits and supposed illnesses of each particular claimant and the differences in operations and locations and customers of the five pipe-cleaning defendants, taken together and taken separately, mean that Plaintiffs cannot identify any common issue that can be resolved with respect to putative class members.
 

 From this scenario the trial court did not find sufficient commonality for class certification. We find that the trial court was reasonable in finding that the plaintiffs failed to satisfy the commonality requirement.
 

 11STypicality. The criterion of typicality requires that “[t]he claims or defenses of the representative parties are typical of the claims or defenses of the
 
 *587
 
 class.” La. C.C.P. art. 591 A(3). We have previously defined “[t]he element of typicality [as] requiring] ... that the claims of the class representatives be a cross-section of, or typical of, the claims of all class members.”
 
 Davis v. Jazz Casino Co., L.L.C.,
 
 03-0005, p. 9 (La.App. 4 Cir. 1/14/04), 864 So.2d 880, 889;
 
 Andry v. Murphy Oil, U.S.A., Inc., supra,
 
 97-0793 at p. 5, 710 So.2d at 1129. The class representatives’ claims must stem from the same event or course of conduct, and interest and injuries must be the same. In the instant case, the trial court noted,
 

 no single accident occurred and each plaintiff was exposed to different substances, if any, at different levels, and at different times, allegedly caused by different defendants, and each plaintiff is himself different.
 

 Relying on testimony from class representatives as well as putative class members, the trial court stated further that “many of the class representatives reported a variety of diseases or symptoms vastly different from those reported, if any, by the putative class members.” Beyond the variety of medical complaints, the judgment noted that certain plaintiffs refused to undergo medical tests; other plaintiffs were inconsistent as to what conditions to monitor. The broad diversity in the ailments underscored the inadequacy of the class representatives’ representation, leading the court to conclude that there was no typicality. The trial court judgment observed:
 

 [T]he class representatives’ claims are widely divergent from those of the putative class members.... Some class representatives claimed no medical condition whatsoever, implicitly conceding that none could have been caused.... Others claim widely varying medical problems, ranging from loss of smell to skin rashes to nosebleeds to hammer-toe to miscarriages to cancer.... Moreover, while some Plaintiffs would welcome medical testing, they are not consistent as to what conditions they want to monitor, or even whether they would trust the results, and other Plaintiffs expressly reject any such tests.
 

 114After reviewing the record, we find that the trial court was reasonable in finding that the plaintiffs failed to satisfy the requirement of typicality.
 

 Adequacy of Representation.
 
 This court has defined “adequacy of representation” in
 
 Dupree v. Lafayette Ins. Co.,
 
 2009 WL 3287607, 09-0321, p. 7 (La.App. 4 Cir. 10/14/09), - So.3d - :
 

 Adequacy of representation for class certification requires that the claims of the proposed class representatives be a cross-section of, or typical of, the claims of all class members .... even though claims by a particular class representative with regard to the exact damages claimed may not be typical, as long as the class of damages asserted by each representative is. [citation omitted]
 

 In
 
 Oliver v. Orleans Parish School Board,
 
 09-0489 (La.App. 4 Cir. 11/12/09), 25 So.3d 189, this court affirmed the trial court’s examination of the potential conflicts of interest among potential class members to determine that the relief sought by School Board employees did not create conflicts arising from competition for jobs, in a suit for reinstatement of employment (i.e., injunctive and/or declaratory relief as opposed to monetary damages).
 

 In the instant case, the trial court recognized that the class representatives would be unable to adequately represent class members’ interests, finding that the testimony established that any given class representative and class member alleged varying injuries caused by varying sub
 
 *588
 
 stances from varying sources, caused by varying acts of numerous defendants occurring over a period of more than four decades. The class representatives and potential class members were not found to meet the adequacy criteria, based on the broad diversity and undetermined characteristics of the alleged effects of the NORM and the vast and individual relationships the potential class members have or had to the several defendants. The trial court judgment stated:
 

 | iaIt follows that adequacy of representation is lacking when class members’ complaints range, as shown above, from cancer to no symptoms at all.... This makes it impossible for some to pursue remedies for others.
 

 The trial court’s reasonable finding that the putative class did not meet the adequacy-of-representation requirement was not manifestly erroneous.
 

 Identifiability (Class Definition).
 
 This court has interpreted “class definition” as follows:
 

 “The final prerequisite under article 591(A) is that the class be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for the purposes of the conclusiveness of any judgment that may be rendered in the case. The parties seeking certification must be able to establish a definable group of aggrieved persons based on objective criteria derived from the operative facts of the case, [citation omitted]. The purpose of the class definition requirement is to ensure that the class is not amorphous, indeterminate, or vague, so that any potential class members can readily determine if he/she is a member of the class.”
 

 Oliver,
 
 25 So.3d at 200.
 
 See also Watters,
 
 15 So.3d at 1128.
 

 The trial court judgment, described the inconsistencies and errors made by the plaintiffs’ expert, Dr. Biggs, in modeling air dispersion and opining regarding air and soil deposition of the pipe scale dust, which expert testimony was to serve as a foundation for the plaintiffs’ establishing times, spatial boundaries, and determinations of exposure for any particular plaintiff. The judgment stated:
 

 [T]he definition could potentially include anyone who once drove through the area. The Special Master further noted that the definition could not be saved by restricting it to persons who suffered injury due to exposure because “[c]lass membership cannot be based on who prevails on the merits; to do so would require a mini-hearing on the merits of each plaintiffs claim to determine who is in the class.”
 

 JjjThe trial court found that the proposed definition lacked temporal, residential, and geographic specificity and was thus “fatally defective.”
 
 [11]
 
 The testimony of experts, including Dr. Biggs, described in detail in the reasons for judgment, supports the decision to deny class certification: tests were exaggerated, incorrect (“critical mistakes” and “flawed assumptions” and “outlandish premises”), or the experts were inconsistent and were impeached. As the trial court observed, so inadequate was the class definition that it would include even a
 
 *589
 
 person who simply drives within a mile of the site once within sixty years. “And there is no objective evidence supporting a one-mile radius in the first place.”
 
 [12]
 

 The plaintiffs contend that this court and the Louisiana Supreme Court have remanded class certifications for re-definition, citing the Supreme Court’s suggestion in
 
 Ford v. Murphy Oil U.S.A., Inc.,
 
 96-2913 (La.9/9/97), 703 So.2d 542, and this court’s certification of a re-defined class in
 
 Andry v. Murphy Oil, U.S.A., Inc.,
 
 97-0793 (La.App. 4 Cir. 4/1/98), 710 So.2d 1126, one of
 
 Ford’s
 
 progeny. The trial court observed that the instant suit is the second attempt at certification, the first attempt having been rejected. The trial court reasonably found that the plaintiffs failed to satisfy the requirement of identifi-ability (class definition). The plaintiffs do not offer a revised or alternative re-definition of the class that would satisfy objectively ascertainable criteria for a class. We find that the trial court’s finding was reasonable and was not manifestly erroneous.
 

 JjjIV
 

 We now consider whether, overall and based on the lengthy proceedings and record below, the trial court abused its discretion in denying class certification. We find guidance in the
 
 McCastle
 
 Court’s consideration of fairness to parties tempered with judicial efficiency.
 
 [13]
 
 The court noted,
 

 In determining whether it would be unfair to require separate adjudications, for instance, the courts should consider the precedential value of the first decision, as well as the extent of injustice that will be produced by inconsistent judgments in separate actions.... [T]he evidence as to the nucleus of liability issues must be identical for each claim.... Four thousand separate suits involve the danger of inconsistent determinations and of earlier separate adjudications with prejudicial effect upon subsequent separate litigation.
 

 456 So.2d at 621.
 

 Cognizant of the
 
 McCastle
 
 duty to make inquiry “into every aspect of the case” and to “require showings beyond the pleadings,”
 
 id.
 
 at 618;
 
 Stevens,
 
 309 So.2d at 152, we note that we review the trial judge’s findings, accompanied by lengthy reasons for judgment, on each element. The finding of insufficient numerosity was clearly wrong; however, the findings as to commonality, typicality, adequacy of representation, and identifiability (class definition) are reasonable.
 

 This court in
 
 Thomas v. Mobil Oil Corp.,
 
 08-0541 (La.App. 4 Cir. 3/31/09), 14 So.3d 7, affirmed the trial court’s denial of class certification for factors reminiscent both of the case at bar and those of
 
 Ford,
 
 wherein the Louisiana Supreme Court rejected class certification. Pertinent factors are as follows:
 

 
 *590
 
 |1S1) The proposed class members will have to offer different facts to establish that certain emissions, either individually or cumulatively, caused them specific damages on specific dates;
 

 2) the causation issue requires consideration of the widely divergent types of personal, property and business damages claimed and requires consideration of each plaintiffs unique habits, medical history, exposures, length of exposures, concentration of chemical substances, medications, medical conditions, employment and location of businesses and residences;
 

 3) each plaintiff will have to prove that the specific level of harm suffered surpassed the level of inconvenience tolerated under Louisiana Civil Code Art. 668;
 

 4) the length of time involved spans from 1989 to at least 2003; ...
 

 6) the degree of inconvenience or damage suffered will vary greatly as to individual plaintiffs.
 

 Thomas,
 
 08-0541 at p. 5, 13 So.3d at 10.
 

 The trial court exceeded the narrow scope prescribed for the initial step in addressing class certification by attributing to the category “numerosity” the court’s fact findings properly made subsequent to the certification phase of class action litigation. Where the trial court improperly deviates from the realm of class certification and wanders into the merits of the claim, “a serious threat to the loss of-individual substantive rights” is posed.
 
 Id,.,
 
 citing
 
 Williams v. State,
 
 350 So.2d 131, 135 (La.1977).
 

 Among numerous examples of that fact-finding which exceeds the scope of the preliminary inquiry for class certification are the following excerpts from the reasons for judgment:
 

 Plaintiffs cite no credible evidence to meet their proposed class definition, which purports to extend to all persons residing within, visiting, or even traveling through, a one-mile radius of the outer boundary of the site identified by Plaintiffs between 1946 and 1992 ...
 

 [T]hey argue only that thousands of people resided within the one-mile radius over the relevant period of time. This bit of information would be relevant only if Plaintiffs could make a prima facie showing that radioactive materials from pipe scale had actually been found in soils or homes distributed in a one-mile radius. But Plaintiffs have | ianot made this shoving. In sum, Plaintiffs presented no evidence whatsoever of radiation contamination on any Plaintiffs property.
 

 Moreover, the only two Plaintiffs who allowed their homes to be tested by LDEQ revealed no contamination. And nor does every claimant purport to suffer from the same non-cancerous diseases .... Thus, resolving whether radiation can cause a particular disease, if that is even possible, does not resolve a common issue.
 

 Plaintiffs argued that this is a “single source” case, even though they have consistently alleged exposure to numerous substances purportedly originating from different companies conducting different operations over varying time periods at different locations along a more than 1.5 mile stretch of Peters Road in Harvey Louisiana.
 

 Nevertheless, the lack of commonality evident from the facts before the court defeats the claim for class certification, which requires all five factors, not four of them, to be present. The plaintiffs failed to support their claim for certification of a class with sufficient evidence of a definable
 
 *591
 
 group.
 
 [14]
 
 Thus the trial court’s findings of absence of commonality, typicality, adequacy of representation, and identifiability (class definition) were not manifestly erroneous.
 

 Were the deficiencies of the plaintiffs’ case as to commonality not so enormous, we would attempt to redefine a class or remand for the trial court to craft a more narrowly defined class, because “[b]y completely denying class certification, without even attempting to apply the provisions of La. C.C.P. art. 592(A)(3)(c), these plaintiffs are, we all know, effectively put out of court.”
 
 Thomas, supra
 
 14 So.3d at 19 (Bonin, J., dissenting). Cognizant of La. C.C.P. art. 592 D,
 
 [15]
 
 we conclude after our examination of the record that redefining the classJjjin this unique factual scenario would not help to maintain the class. Despite its exceeding the boundaries of examination into facts for certification of a class, the trial coui’t did not abuse its discretion in denying class certification.
 

 DECREE
 

 We therefore affirm the trial court’s judgment.
 

 AFFIRMED.
 

 [1]
 

 .The entire list of defendants, from the original and amending and supplemental pleadings includes Alpha Technical, Chevron USA, Inc., Conoco Inc., Exxon Mobil Corporation, Homeco, Inc., Mobil Exploration & Producing U.S., Inc., Phillips Oil Co., Sexton Oil & Mineral Corporation, ShellOffshore, Inc., Shell Oil Company, System Fuels, Inc., Shell Western E & P, Inc., Texaco, Inc., Tubular Corporation, Alpha Technical Services, Inc., Intracoastal Tubular Services, Inc. [ITCO], Swepi, L.P., Mobil Exploration & Producing Southeast, Phillips Petroleum Co. (also known as Phillips Oil Co.); landowners Joseph Gre-fer, Camile Grefer, Rose Marie Grefer Hassi, and Henry Grefer; also, Rathborne Properties, LLC, Rathborne Land Company LLC, and Rathborne Companies, LLC, were named in an amending petition as defendants with an interest in the property at issue.
 

 [2]
 

 . The decision was vacated and remanded
 
 sub nom. Exxon Mobil Corp. v. Grefer,
 
 549 U.S. 1249, 127 S.Ct. 1371, 167 L.Ed.2d 156 (2007).
 

 [3]
 

 . Plaintiffs use the acronym TERM to refer to the deposits, the "TE” meaning "technologically enhanced"; and the substance is sometimes referred to as Technologically Enhanced Naturally Occurring Radioactive Material, TENORM, defined as "natural sources of radiation which would not normally appear without some technological activity not expressly designed to produce radiation.”
 
 Grefer,
 
 02-1237 at p. 9, fn. 11; 901 So.2d at 1128, fn. 11.
 

 [4]
 

 .
 
 Grefer, supra,
 
 02-1237 at pp. 1-9, 901 So.2d at 1124-49, sets forth a fuller history of the oilfield discovery and response to the identification of NORM/TERM, and the Grefer landowners’ course of dealing with the condition of the property which is the subject of their lawsuit and the instant one.
 

 [5]
 

 . "Toxic dust” refers to radioactive elements including uranium and thorium and their decay products, as well as arsenic, barium, cadmium, lead, mercury, selenium, silver, and nickel.
 

 [6]
 

 .La. C.C.P. art. 592 A(3)(b) states:
 

 If the court finds that the action should not be maintained as a class action, the action may continue between the named parties. In either event, the court shall give in writing its findings of fact and reasons for judgment. ... A suspensive or devolutive appeal ... may be taken as a matter of right from an order or judgment provided for herein.
 

 [7]
 

 . In addition to the five part A prerequisites, Article 591 B requires that one of the three following criteria be met to satisfy the certification requirements: (1) The prosecution of separate actions by or against individual members of the class would create a risk of (a) inconsistent or varying adjudications that would establish incompatible standards of conduct for the party opposing the class, or (b) Adjudications with respect to individual members of the class would, as a practical matter, be dispositive of the interests of other class members not parties to those adjudications or would substantially impair/impede their ability to protect those interests, or (2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole, or (3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class is superior to other methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include: (a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions, (b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class, (c) The desirability or undesirability of concentrating the litigation in the particular forum; (d) The difficulties likely to be encountered in the management of a class action, (e) The practical ability of individual class members to pursue their claims without class certification, (f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation[.]
 

 [8]
 

 . The judgment referred to the plaintiffs’ failure to establish the plausible numerosity, i.e., numerosity is not shown by mere allegations of a large number of potential claimants, or, in the case of a mass tort, by showing a certain population within a certain geographic radius or proximity of the event.
 
 Boyd v. Allied Signal, Inc.,
 
 03-1840, pp. 11-12 (La.App. 1 Cir. 12/20/04), 898 So.2d 450, 457, quoting
 
 Hampton, supra.
 

 [9]
 

 .
 
 La. C.C.P. art. 592 B(2) lists requirements for notice to all putative members of the class, including an election form should a putative member desire to be excluded from the action. Article 592 B(2)(c) states that the judgment, favorable or not, will include all members who do not request exclusion from the class.
 

 [10]
 

 . Patricia Williams, Ph.D., who made a "community health assessment” based on self-reported Proof of Claim forms completed by 2,351 putative plaintiffs but examined only a handful of medical records, did not include in her assessment asymptomatic people who lived or worked in the designated class area, and she based conclusions on Dr. Biggs' "flawed” air dispersion modeling. (See Judgment, p. 6, fn 3.)
 

 [11]
 

 . The Special Master reported, "Based upon the evidence presented the proposed class is not susceptible of a definition.... The proof offered does not support a useful basis for a class definition in this instance. It would include persons who are alleged to be affected by the activity on the 'Property' regardless of whether the resided there, worked there or simply drove by the area. Accordingly, the proposed definition and the proof offered to support it is legally insufficient because it does not define an objective group of persons who would be bound by res judicata. La. Code Civ. Proc. art. 591(A)(5).”
 

 [12]
 

 . We reiterate that we do not analyze the case under La. C.C.P. art. 591 B because to do so would be irrelevant: "The second level of analysis for determining whether to certify a class action is governed by La.Code Civ. Proc. Art. 591 B. A court reaches this level of analysis only if it finds that all the requirements of article 591 A have been satisfied.”
 
 Dupree v. Lafayette Insurance Company,
 
 2009 WL 3287607, *9, 09-0321 (La.App. 4 Cir. 10/14/09), - So.3d -.
 

 [13]
 

 . We recognize the weighing of concerns for "small” claims, inconsistency iii results, rights of absentees, and legislative policy considerations set forth by the
 
 McCastle
 
 Court, 456 So.2d at 619, and the record of this case shows that the trial court amply heard and reviewed and weighed sufficient evidence to support its denial of class certification in this case. While the Supreme Court reversed the appellate court and allowed the class action, the facts of
 
 McCastle
 
 are distinguishable from the factual scenario at bar.
 

 [14]
 

 . The Special Master, Fred L. Herman, wrote on January 31, 1008, in his Special Master Recommendation:
 

 Based upon the evidence presented the proposed class is not susceptible of a definition. If the class is accepted as argued by the Plaintiffs, it would include persons who had only a very remote connection to the property without regard to proximity and time. The proof offered does not support a useful basis for a class definition in this instance .... [and] is legally insufficient because it does not define an objective group of persons who would be bound by
 
 res judicata. ...
 
 The aggrieved parties will have an opportunity to present their claims individually.
 

 The trial court judgment stated, "Plaintiffs ... have no evidence whatsoever of actual contamination.”
 

 [15]
 

 . C.C.P. art. 592 D states in pertinent part: "When appropriate an action may be brought or maintained as a class action with respect to particular issues,
 
 or a class may be divided into subclasses and each subclass treated as a class."
 
 [emphasis added]