GRAVOIS, J.
In this case arising out of flooding following Hurricane Katrina, plaintiffs/appellants appeal a trial court judgment that denied class certification under La. C.C.P. art. 591.[1] For the following reasons, we affirm the judgment of the trial court.
FACTS AND PROCEDURAL BACKGROUND
On September 24, 2005, plaintiffs, Robert Harvey, Darleen Jacobs Levy, Susan Laurendine, and William Laurendine, filed *766 a claim for damages with a request for class action certification against the Board of Commissioners for the Orleans Levee District for the Parish of Orleans (the "Levee District"), asserting that the Levee District was negligent in its design and construction of flood walls along the 17th Street and London Avenue Canals in Orleans Parish, which flood walls collapsed during and in the aftermath of Hurricane Katrina on August 29, 2005, resulting in damages to their respective properties located in Orleans Parish. Plaintiffs further asserted that "the number of business and property owners affected by the negligence of the defendant are too numerous to mention and that this lawsuit should be certified as a class action for all residents, business owners, and occupants of the affected areas in the New Orleans area."
On June 7, 2006, plaintiffs filed a First Supplemental and Amending Petition. Al LeBeouf, Aline Hodges, Pierre Ascani, Theresa Harvey, Dale Atkins and Anita L. Sarrat were added as plaintiffs, and Robert Harvey and Darlene Jacobs Levy were deleted as plaintiffs. Additional allegations of negligence were asserted against the Levee District. The next day, on June 8, 2006, plaintiffs filed a motion to certify the action as a class action pursuant to La. C.C.P. art. 592.
Plaintiffs filed a Second Supplemental and Amending Petition on July 10, 2006, adding as defendants the State of Louisiana, Department of Transportation and Development (the "DOTD"), and the Sewerage and Water Board for the Parish of Orleans (the "SWB"), asserting additional acts of negligence by these defendants.
In Case Management and Scheduling Order No. 1 signed by the trial court on December 23, 2013, the proposed class was defined by plaintiffs as follows: "All residents, domiciliaries, property owners and business owners of the parishes of Orleans and Jefferson (limited to Hoey's Basin) in the State of Louisiana whose properties or businesses were damaged by flooding caused by the failure of the 17th Street Canal and London Avenue Canal hurricane protection levees and floodwalls in New Orleans, Louisiana on or after August 29, 2005."
After a lengthy procedural history that is largely irrelevant to the instant appeal, the trial court conducted a hearing on plaintiffs' motion to certify the class on November 10 and 14, 2016.[2] At the close of plaintiffs' evidence, the trial court granted defendants' oral motion for involuntary dismissal and denied class certification, finding that plaintiffs had failed to produce evidence to support the requirements of commonality and typicality, as required by La. C.C.P. art. 591(A)(2) and (3), respectively, and superiority, as required by La. C.C.P. art. 591(B)(3). The trial court gave detailed oral reasons for its ruling. A written judgment to this effect was signed on November 22, 2016. Plaintiffs' appeal follows.
On appeal, plaintiffs argue that the trial court procedurally erred in granting defendants' motion for involuntary dismissal, asserting that the class certification hearing was not a trial on the merits of the case. They also argue that the trial court erred in excluding the testimony and report of their expert engineer, James Phipps. Plaintiffs further argue that the trial court erred in finding that plaintiffs failed to prove commonality, as required by La. C.C.P. art. 591(A)(2), and superiority of *767 the class action suit, as required by La. C.C.P. art. 591(B)(3).
STANDARD OF REVIEW AND APPLICABLE LAW
The standard of review for class certification is bifurcated: factual findings are reviewed under the manifest error/clearly wrong standard, but the trial court's judgment on whether to certify the class is reviewed by the abuse of discretion standard. Pollard v. Alpha Tech., Chevron U.S.A., Inc. , 08-1486 (La. App. 4 Cir. 1/28/10), 31 So.3d 576, 581, citing Brooks v. Union Pacific Railroad Company , 08-2035 (La. 5/22/09), 13 So.3d 546, 554.
The determination of whether a class action meets the requirements imposed by law involves a rigorous analysis. Brooks v. Union Pacific Railroad Company , 13 So.3d at 554. Such an analysis requires the district court to "evaluate, quantify and weigh [the relevant factors] to determine to what extent the class action would in each instance promote or detract from the goals of effectuating substantive law, judicial efficiency, and individual fairness." Price v. Martin , 11-0853 (La. 12/6/11), 79 So.3d 960, 966-67, citing McCastle v. Rollins Environmental Services of Louisiana, Inc. , 456 So.2d 612, 618 (La. 1984). McCastle imparts a duty on the court to make active inquiry "into every aspect of the case" and "to require showings beyond the pleadings." Id. In practice, the analysis will frequently entail overlap with the merits of the underlying claim. Id. , citing Wal-Mart Stores, Inc. v. Dukes , 564 U.S. 338, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011).
The threshold requirements for class certification are found in La. C.C.P. art. 591(A), which provides:
A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that joinder of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case. This prerequisite shall not be satisfied if it is necessary for the court to inquire into the merits of each potential class member's cause of action to determine whether an individual falls within the defined class.
These prerequisites are generally known as numerosity, commonality, typicality, adequacy, and identifiability (class definition). Pollard v. Alpha Tech., Chevron U.S.A., Inc. , 31 So.3d at 583. An action may be certified as a class action only if all of the five prerequisites of Article 591(A) are present. Id.
If all of the prerequisites of Article 591(A) are satisfied, Article 591(B) provides that the court must also find that plaintiffs have met at least one of the following requirements found in Article 591(B)(1)-(3), to-wit:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
*768 (a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification; [or]
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation[.]
A trial court has wide discretion whether or not to certify a class. Chicago Property Interests, LLC v. Broussard , 11-0788 (La. App. 4 Cir. 5/23/12), 90 So.3d 563, writ denied , 12-1413 (La. 10/08/12), 98 So.3d 857, stay denied , writ denied , 13-2983 (La. 1/8/14), 130 So.3d 314, stay denied , writ denied , 13-2984 (La. 1/8/14), 130 So.3d 315. Any error to be made in deciding class action issues should be in favor of and not against maintenance of the class action, because a class certification order is subject to modification if later developments during the course of trial so require. Id.
ASSIGNMENTS OF ERROR
Involuntary dismissal
On appeal, plaintiffs argue that the trial court erred in granting defendants' motion for involuntary dismissal, made orally following the presentation of plaintiffs' witnesses and evidence at the hearing to certify the class. They argue that the motion for involuntary dismissal was procedurally improper in the current posture of the case, because the certification hearing was not a trial on the merits of the case.
Upon review, we find that plaintiffs' arguments in this assignment of error are without merit. La. C.C.P. art. 1672(B) provides:
*769 In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
Article 1672(B), by its own terms, applies to "an action tried by the court without a jury." (Emphasis added.) The Article, therefore, is not limited in application to a trial on the merits. The term "action" is broader than a trial, and includes a hearing on a motion to certify a class. For instance, in Ladieux v. Jefferson Parish Hosp. Serv. Dist. No. 2 , 14-449 (La. App. 5 Cir. 11/25/14), 165 So.3d 109, 110, a motion for involuntary dismissal was granted by the trial court following the presentation of plaintiffs' evidence, denying class certification. Given that plaintiffs bore the burden of proof regarding class certification, we find no merit to plaintiffs' assertion that the use of this procedural device is inappropriate at a hearing for class certification.[3]
Exclusion of expert testimony
Plaintiffs also argue that the trial court erred in excluding the testimony and report of James Phipps, a geotechnical engineer whom plaintiffs engaged to analyze the potential liability of the two remaining defendants in this case, the SWB and the DOTD. Plaintiffs argue that the trial court misapplied the standards of La. C.E. art. 702 by delving into the merits of the litigation as a whole, rather than the specific issue of whether plaintiffs bore their burden of proof to certify the class.
La. C.E. art. 702 provides:
A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(2) The testimony is based on sufficient facts or data;
(3) The testimony is the product of reliable principles and methods; and
(4) The expert has reliably applied the principles and methods to the facts of the case.
In its ruling to exclude Mr. Phipps' testimony and report, the trial court found that subparagraphs (1) and (2) of Article 702 were not met.
Mr. Phipps testified that he was retained in 2014 by plaintiffs to consider the potential liability of the two remaining defendants, the SWB and the DOTD. He was offered as an expert geotechnical engineer, which he described as the application of engineering principals to the interaction of soils and structures. He testified that he had a masters degree in civil engineering, which focuses on design and building of large structures, which could include drainage systems, levees, and floodwalls. He was a licensed professional engineer in three states: Texas, Oklahoma, and Arkansas. His job experience as a geotechnical engineer included designing and building high-rise buildings *770 with deep excavations, distress evaluations, evaluations of retaining walls, and the occasional damn or levee project. He had experience in soil sampling. He had previously been offered as an expert witness in foundation distress cases.
As preparation for testifying in this case, Mr. Phipps said that he visited the 17th Street Canal and the London Avenue Canal, along with the adjoining neighborhoods, in 2014, prior to the certification hearing, but conducted no inspections or testing of any kind at the sites. He also reviewed several comprehensive reports made by other entities regarding the flooding, as well as historical documents that chronicled various dredging projects on the 17th Street Canal. These reports were referred to as IPET (Interagency Performance Evaluation Task Force), ILIT (Independent Levee Investigation Team), DOTD Team Louisiana, and the Delft University of Technology (Holland) reports. He also reviewed Corps of Engineer manuals regarding flood works and flood control projects, and the deposition of a SWB employee. Mr. Phipps prepared a report for this litigation, based on his review of the aforementioned materials provided by plaintiffs' counsel, before he visited New Orleans or saw the sites of the breaches. Between reviewing the background reports and writing his report, Mr. Phipps estimated that he spent approximately 20 hours of time.
On traversal, Mr. Phipps admitted that he had never designed a floodwall or a drainage canal. He also had never conducted a forensic analysis of levee, floodwall, or canal designs. He also had never conducted an engineering analysis of the design of a levee or floodwall. He also had never worked on a flood case prior to this one. Mr. Phipps admitted that he did not completely read the reports on which he relied (for instance, he testified that he read around 300 pages of the 8,000 page IPET report). Mr. Phipps acknowledged that he only considered the various reports and materials furnished to him by plaintiffs' counsel, and did not conduct any independent research into the failure of the 17th Street or London Avenue Canals, or read any other reports about the flooding, after acknowledging that other reports existed. He agreed that 30-40 per cent of his expert report was in fact written by plaintiffs' counsel, specifically the historical text section of the report, and the footnotes citing legal cases.[4]
Mr. Phipps agreed that in the 20 hours he spent on this report, he did not have time to read the entirety of any of the source reports furnished to him by plaintiffs' counsel. Mr. Phipps acknowledged that he did not visit any of plaintiffs' properties. He clarified that he was not a hydrologist, and had done no calculations or hydrology assessments to determine all of the sources of water that accumulated within three "polders" of New Orleans included in this putative class action: the Lakeview polder, the west Gentilly polder, and the east Gentilly polder.[5]
Mr. Phipps stated, during traversal, that he was not charged with trying to determine why the levees failed, or to do exhaustive research. He also confirmed that he was asked to focus on the actions of the SWB and the DOTD leading up to the breach, but was not to consider the actions *771 of the Army Corps of Engineers, nor the Orleans Levee District.[6]
At the hearing, the trial court noted that this was not a Daubert[7] hearing. It considered Mr. Phipps' testimony only in the context of whether it would aid the court in determining whether to certify the proposed class and if it met the other criteria in Article 702. After considering Mr. Phipps' testimony at the hearing, the trial judge was careful to explain that while he recognized Mr. Phipps' educational qualifications, he found that Mr. Phipps' testimony and report would not be helpful to the court in determining whether to certify the class, i.e. , whether plaintiffs had met the requirements of numerosity, commonality, typicality, adequacy, and identifiability. The court implicitly found that Mr. Phipps' testimony was not based on sufficient facts or data, given the limited scope of materials he consulted prior to making his report, and further that the testimony was not the product of reliable principles and methods, given the facts that Mr. Phipps considered only materials furnished to him by plaintiffs' counsel, which he did not thoroughly read, that he did not conduct any other research into the levee breaches, and that he spent a relatively scant amount of time reviewing the materials and formulating his report, considering the volume of materials provided.
After careful review of the record and the applicable law, we find no abuse of the trial court's discretion in excluding the testimony and report of Mr. Phipps at the class certification hearing. The trial court's assessment of the limited scope of Mr. Phipps' report is supported by the record. Further, given that limited scope, we find no abuse of the trial court's discretion in its conclusion that the testimony would not aid the court in determining the existence of the required factors for class certification found in Article 591(A). This assignment of error is without merit.
Class certification: Commonality
On the issue of class certification, plaintiffs argue that the trial court erred in finding that they failed to prove the "commonality" of plaintiffs' claims. La. C.C.P. art. 591(A)(2). They argue that they have established at least three undisputed common facts that exist within the putative class: that defendants had a duty (or duties) to build and/or maintain the levee walls (of the 17th Street and London Avenue Canals) properly; that the levee walls failed; and that every one of the members of the proposed class suffered direct and ascertainable damage to some degree as a result of the flooding. In brief, they contend that the commonality prerequisite is "not high," citing federal Fifth Circuit cases from 1986 and earlier. Plaintiffs also note that the court certified the class in Chicago Property Interests , supra , in which residents of Jefferson Parish sued governmental entities for flooding damage caused by Hurricane Katrina. They argue that there is no material difference between the claims in Chicago Property Interests and the case at bar.
In order to meet the commonality requirement, each member of the class *772 must be able to prove individual causation based on the same set of operative facts and law that would be used by any other class member to prove causation. Brooks v. Union Pacific Railroad Company , 13 So.3d at 559.
In Price v. Martin , 79 So.3d at 969, the Supreme Court discussed the commonality requirement:
The commonality prerequisite requires a party seeking class certification to show that "[t]here are questions of law or fact common to the class." La. C.C.P. art. 591(A)(2). This language is "easy to misread, since '[a]ny competently crafted class complaint literally raises common "questions." ' " Wal-Mart Stores, Inc. , 131 S.Ct. at 2551, quoting Nagareda, Class Certification in the Age of Aggregate Proof , 84 N.Y.U.L. Rev. 97, 131-32 (2009). The mere existence of common questions, however, will not satisfy the commonality requirement. Commonality requires a party seeking certification to demonstrate the class members' claims depend on a common contention, and that common contention must be one capable of class-wide resolution-one where the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. , 131 S.Ct. at 2551. As this court has succinctly explained:
To satisfy the commonality requirement, there must exist "as to the totality of the issues a common nucleus of operative facts...." A common question is one that, when answered as to one class member, is answered as to all of them. [Citations omitted.]
Dupree [v. Lafayette Ins. Co. ], 09-2602 at 11 [ (La.11/30/10) ], 51 So.3d [673] at 682-83.
In the context of mass tort litigation, this court has further refined the commonality requirement, stating that, in such cases, "in order to meet the common cause requirement, each member of the class must be able to prove individual causation based on the same set of operative facts and law that would be used by any other class member to prove causation." Brooks , 08-2035 at 17, 13 So.3d at 559.
In Price v. Martin , the Supreme Court reversed the certification of a class. The mass tort that allegedly caused damages to the putative class involved emissions from an industrial plant into a neighborhood over a significant period of years. The Court found that the factual scenario did not meet the commonality requirement of "only mass torts 'arising from a common cause or disaster' [being] appropriate for class certification." Price v. Martin , 79 So.3d at 974. Though the emissions came from one plant, the plant had at least three owners/operators over the time period in question, only two of which had been sued, thus making it extremely difficult to quantify each particular defendant's participation/fault. The Court found that the evidence showed that the issue of breach would turn on different conduct, by different defendants, at different times, under different legal standards. Id. at 971.
The instant matter shows similar parallels. Though the damages in question were alleged to have been caused by the failure of the flood walls following Hurricane Katrina, the evidence presented at the certification hearing shows two defendants along with at least two other actors whose fault must be considered, and the failure of floodwalls on two canals caused by different conduct by multiple actors, occurring at different times. Further, it was shown that flooding in the three polders in question was possibly caused by different sources, including but not limited to floodwall breach, floodwall overtopping, and accumulated *773 rainfall, that varied depending on the particular location within each polder and the particularities of each property, making it difficult if not impossible to quantify each actor's contribution to the flooding at any particular property. Just as in Price v. Martin , the flooding damages of each property will not turn on common evidence, but rather on a myriad of property-specific facts.[8]
The Brooks case involved flooding damages against multiple defendants following a heavy rain event. The class sought to be certified included three different "basins;" however, the testimony at the certification hearing showed that the predominate cause of the flooding varied from basin to basin, and that secondary causes of flooding damages would vary depending on specific property conditions such as elevation. The Supreme Court affirmed the court of appeal's decertification of the class originally granted by the trial court, observing that "the cause of flooding must be the same for each member of the class, and if there is more than one cause of flooding, each of these causes must be the same for each class member. This is difficult in a mass tort case involving more than one defendant, more than one cause, and more than one theory of liability." Brooks v. Union Pacific Railroad Company , 13 So.3d at 559. Though it applied the version of La. C.C.P. art. 591 as it read prior to the 1997 revision thereof, the case remains instructive for the applicability of the class action procedural device to mass torts. Brooks held that mass torts may only be brought as a class action if they arose from a common cause or disaster, based on the fact that causation is an essential part of the liability determination, and if causation differed for each plaintiff, individual trials would be required which would defeat the purpose of the class action device. Id. at 558.
Plaintiffs cite Chicago Property Interests as supportive of class certification, because that case allowed the certification of a class of property owners who suffered flooding damages in the aftermath of Hurricane Katrina in Jefferson Parish, finding commonality. However, that case is clearly distinguishable from the instant case because the evidence in Chicago Property Interests showed that the flooding arose from the same set of operative facts and related to all class members: the shutting off of drainage pumps in Jefferson Parish during the hurricane and its immediate aftermath, allegedly stemming from a plan or policy promulgated by Jefferson Parish. Chicago Property Interests, LLC v. Broussard , 11-0788 at p. 18. In the instant case, the evidence showed that the causes of flooding varied throughout the geographical area and thus were not common to all plaintiffs, as in Brooks and Chicago Property Interests . Thus, though the two cases both involved flooding in the aftermath of Hurricane Katrina, the plaintiffs in Chicago Property Interests met the required burden of proving commonality, whereas plaintiffs in this case did not. This assignment of error is without merit.
Class certification: Superiority
On the issue of class certification, the trial court also found that La. C.C.P. art. 591(B)(3)'s requirement of "superiority" was not met.[9] In Brooks , the Supreme *774 Court held that in making the superiority determination, the district court must "evaluate, quantify, and weigh [the relevant factors] to determine to what extent the class action would in each instance promote or detract from the goals of effectuating substantive law, judgment efficiency, and individual fairness." Brooks v. Union Pacific Railroad Company , 13 So.3d at 554. The Price v. Martin court noted that by enacting La. C.C.P. art. 591, et seq. , the legislature has codified the Supreme Court's prior class certification jurisprudence. Price v. Martin , 79 So.3d at 966.
La. C.C.P. art. 591(C) cautions that class "[c]ertification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class."
In its extensive oral reasons for judgment, the trial court found that the superiority requirement had not been met because individual issues predominated this case. Plaintiffs argue in brief that the court erred because "aggrieved persons may be without effective means of redress absent the class action device" and that "the alternatives, (including joinder, intervention, consolidation, and the use of a test case), do not sufficiently protect the legal rights of the aggrieved parties," yet such statements are conclusions without supporting evidence. As such, plaintiffs have failed to show that the trial court abused its discretion in so finding. This assignment of error is without merit.
Class certification: Typicality
The trial court also found that the "typicality" requirement of La. C.C.P. art. 591(A)(3) was not met, but plaintiffs do not brief this on appeal. As previously noted, the trial court must find that plaintiff proved all of the requirements of Article 591(A), including typicality. Briefing only the commonality requirement and failing to brief the typicality requirement is thus necessarily fatal to this appeal.
CONCLUSION
For the foregoing reasons, we find no manifest error in the trial court's factual conclusions, nor abuse of discretion in its conclusion that plaintiffs failed to bear their burden of proof at the hearing of the motion to certify the class. Accordingly, the judgment denying class certification is affirmed.
AFFIRMED

This suit was filed in Orleans Parish. It comes to this Court following the recusal of the Fourth Circuit Court of Appeal.

The Levee District, one of the original defendants, was dismissed from this litigation in 2014, prior to the class certification hearing. All claims against the Levee District were settled through federal court litigation.

It is important to note, however, that the grant of defendants' motion for involuntary dismissal pertained only to the class certification, and not to any individual claim against defendants.

Mr. Phipps agreed that he was not a lawyer, did not have the skills to conduct legal research and determine the meanings of the legal cases cited in his report, and would not have included citations to legal cases in a report authored solely by him.

"Polder" is a term of art that means a low-lying tract of land enclosed by dikes or similar boundaries that forms an artificial hydrological entity.

The Army Corps of Engineers and the Orleans Levee District were at least two other actors involved in the drainage system of New Orleans, as evidenced by the pleadings in this case, information in the aforementioned reports, and this Court's judicial notice of case law cited to this Court by the parties.

Daubert v. Merrell Dow Pharms., Inc. , 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In State v. Foret , 628 So.2d 1116, 1123 (La. 1993), the Louisiana Supreme Court adopted Daubert 's requirement that expert scientific testimony must rise to a threshold level of reliability in order to be admissible under La. C.E. art. 702.

In their responses to interrogatories, plaintiffs acknowledged that damages would be property-specific.

Previously, we noted that class certification shall only be granted if each requirement in Paragraph A of Article 591 is met. Having found that the commonality requirement of paragraph A was not met, the trial court was not required to consider the requirements of paragraph (B)(3), predominance and superiority, though it did. Pollard v. Alpha Tech. , 31 So.3d at 590-91.