JUDE G. GRAVOIS, Judge.
^Plaintiffs filed this action in 2009 seeking recovery of damages resulting from the wrongful deaths of their decedents as a result of their decedents’ exposure to naturally occurring radioactive material (“NORM”), and other hazardous, toxic, and carcinogenic radioactive material, including technologically enhanced radioactive material (“TERM”), that accumulated on the inside of pipes used in oil production.[1] Defendants filed exceptions of prescription, arguing that plaintiffs’ claims were prescribed on their faces because all of their decedents had died more than one year prior to filing suit. Plaintiffs asserted in their petition and argued in opposition to the exceptions of prescription that prescription on their causes of action had been suspended by the earlier filing of a putative class action suit.
The trial court granted the exceptions of prescription, finding that plaintiffs had previously “opted out” of the putative class as a result of their filing of an earlier suit, and dismissed plaintiffs’ suit with prejudice. The trial court also denied plaintiffs’ motion to dismiss 'without prejudice and *169 plaintiffs’ exception of lis pendens. From these rulings, plaintiffs appeal.
|fiOn appeal, plaintiffs argue that prescription in these wrongful death claims had been suspended pursuant to LSA-C.C.P. art. 596 by the filing of the putative class action suit, a class to which they allege they all belonged. Class certification in that suit was denied on April 14, 2008. The judgment denying certification of the class was affirmed on appeal on January 28, 2010. Thus, plaintiffs argue, pursuant to Article 596, they had until one year and thirty days after the date the ruling denying class certification was affirmed on appeal in which to file suit, and thus this suit, filed on March 16, 2009, was timely.
For the following reasons, we find that prescription in the instant suit was suspended by the filing of the earlier class action suit, and thus this suit was tiinely filed. Accordingly, we reverse the trial court’s grant of defendants’ exceptions of prescription and remand this matter for further proceedings.

FACTS AND PROCEDURAL HISTORY

The background facts and procedural history of this proceeding are rather detailed and somewhat convoluted. The inception of this litigation can be traced back to May 22, 2001, when a multi-million dollar jury verdict was rendered in a suit entitled Grefer v. Alpha Technical,[2] a suit by landowners in Harvey, Louisiana, who had leased their land to various oil field defendants who conducted pipe-cleaning operations on the land leased to them. The verdict in Grefer awarded the plaintiffs compensatory and punitive damages as a result of the defendants’ 17contamination of their immovable property with radioactive material from the defendants’ pipe-cleaning operations.
The next day, on May 28, 2001, Pollard v. Alpha Technical Services was filed in Civil District Court for the Parish of Orleans (“Pollard CDC”)[3] by plaintiffs asserting damages for personal injuries for exposure to NORM. The plaintiffs in Pollard CDC had either worked at one of the various pipe yards in question or lived near one of the pipe yards, including the Intracoastal Tubular Services, Inc. (“ITCO”) pipe yard in Harvey, Louisiana.
On May 10, 2002, Pollard CDC was consolidated with other purported class action cases and re-captioned In Re Harvey TERM Litigation in Civil District Court in Orleans Parish, which included both personal injury and wrongful death claims for exposure to NORM.[4]
*170 On December 20, 2002, several hundred plaintiffs whose claims fit the proposed class definition of claims included in the In Re Harvey TERM Litigation, filed a separate suit in Civil District Court in Orleans Parish entitled Lester v. ExxonMobil, et al (“Lester CDC ”).[5] Many of the plaintiffs involved in the instant appeal and their decedents were actually named as plaintiffs in Lester CDC. The record indicates that no wrongful death claims were made by the plaintiffs in Lester CDC. Noteworthy, the plaintiffs in Lester CDC asserted in their petition that they did not desire to have their claims heard as part of the pending class action, and in the event the putative class became certified and if the certification |swas affirmed on appeal, they would nevertheless opt out with notices to class counsel and to the Court.
On March 23, 2006, the claims of 26 Lester CDC plaintiffs, who were allegedly exposed to NORM at the ITCO pipe yard facility in Harvey, were severed and transferred to the 24th Judicial District Court (No. 63CM02) (“Lester 24th JDC”) on an exception of venue.
On February 20, 2009, new plaintiffs— Donna Meerman (Mrs. Leonardus Meer-man) and Evelyn Gauthreaux (Mrs. Murphy Gauthreaux) and Mr. Gauthreaux’s children — -joined in Lester 24th JDC by filing a motion for leave to file a Clarifying and Amending Petition raising, for the first time in Lester 24th JDC, wrongful death claims resulting from the deaths of their decedents who were also named as personal injury plaintiffs in Lester CDC. In addition to asserting these wrongful death claims, the Clarifying and Amending Petition adopted all of the allegations made in the original Lester CDC petition, and all subsequent supplemental and amending petitions. This motion was granted on April 30, 2009 and the Clarifying and Amending Petition was filed. The defendants in Lester 24th JDC excepted to the wrongful death claims asserted in the Clarifying and Amending Petition as being prescribed. The Lester 24th JDC trial court granted defendants’ exception of prescription, finding that the wrongful death claims made by the plaintiffs in the Clarifying and Amending Petition were prescribed. On appeal, in Lester v. Exxon Mobil Corp. (“Lester”),[6] this Court affirmed the granting of the exception of prescription by the Lester 2íth JDC trial court. In Lester, this Court found that the Clarifying and Amending Petition was prescribed because: 1) by filing their own suit (the Lester CDC cumulated action) prior to the trial court’s ruling on class certification in In Re Harvey TERM Litigation, the plaintiffs in the | ^Clarifying and Amending Petition had effectively “opted out” of the benefits of participation in the In Re Harvey TERM Litigation class action under LSA-C.C.P. art. 596;[7] and 2) the Clarify *171 ing and Amending Petition did not relate back to the 2002 original petition because it failed to meet all of the Giroir[8] criteria.
In the meantime, on February 20, 2009, some of the persons who were named as personal injury plaintiffs in Lester CDC filed a new suit in Civil District Court in Orleans Parish entitled Olivia Bailey, et al v. ExxonMobil Corp., et al (“Bailey CDC ”),[9] raising for the first time wrongful death claims resulting from their decedents’ exposure to NORM at the ITCO pipe yard. On March 16, 2009, these same plaintiffs filed a nearly identical suit in the 24th Judicial District Court, also entitled Olivia Bailey et al v. ExxonMobil Corp. et al (“Bailey 24th JDC ”).[10] The instant appeal emanates from Bailey 24th JDC. Many of the plaintiffs in the instant appeal and their decedents were plaintiffs themselves in Lester CDC, and asserted causes of action therein for damages for their own personal injuries arising out of their personal exposure to NORM.
Also of particular significance to this appeal, on April 14, 2008, the Civil District Court for the Parish of Orleans denied class certification in In Re Harvey TERM Litigation. That ruling was appealed and was affirmed on appeal on January 28, 2010.[11]
In the instant suit (Bailey 24th JDC), the wrongful death plaintiffs specifically claimed to be putative class members of In Re Harvey TERM Litigation (rather than rejecting participation in that suit as had been done by the | ^Lester CDC plaintiffs), and claimed that prescription on their wrongful death claims was suspended by the filing of In Re Harvey TERM Litigation, within which putative class’s definition they were included. (As noted above, In Re Harvey TERM Litigation asserted claims for both personal injuries and wrongful death by exposure to NORM, whereas this Court was clear in Lester that prior to the filing of the Clarifying and Amending Petition, only causes of action for personal injuries were alleged in Lester CDC and Lester 24th JDC.)
Defendants in the instant suit filed exceptions of prescription, arguing that the instant plaintiffs’ claims were prescribed on their faces because their decedents had died more than one year prior to this suit being filed. Defendants also alleged that the instant plaintiffs had opted out of participation in In Re Harvey TERM Litigation in the original petition in Lester CDC; accordingly, they could not receive the benefit of the suspension of prescription caused by the filing of In Re Harvey TERM Litigation as per LSA-C.C.P. art. 596, and thus the instant suit was also prescribed on that basis.
The trial court in the instant suit granted defendants’ exceptions of prescription, specifically finding that the instant plaintiffs had previously “opted out” of the putative class in In Re Harvey TERM Litigation by filing the Lester CDC petition, and dismissed the instant plaintiffs’ suit with prejudice. The trial court also denied the instant plaintiffs’ motion to dismiss without prejudice and also denied their *172 exception of lis pendens. From these rulings, plaintiffs appeal.
For the following reasons, we reverse the judgments granting the exceptions of prescription.

\„ANALYSIS OF PRESCRIPTION ISSUE

The trial court granted defendants’ exceptions of prescription for reasons stated from the bench. The claims of sixteen plaintiffs were found to be prescribed at a hearing that was held on October 25-26, 2010, with the trial court making individual rulings with respect to each particular claim.[12] The trial court’s reasons for judgment in dismissing the claims of these sixteen plaintiffs were, in pertinent part:
... [Prescription itself was claimed to have been interrupted by the En [sic] Re: Harvey Term matter. For the reasons outlined in Lester versus Exxon Mobil Oil Corporation, Fifth Circuit, June 29th 2010, the filing of Harvey Term did not suspend prescription for those plaintiffs who filed another suit before ruling on the class certification when Harvey Term was handed down. I am bound by the Fifth Circuit decision.
Additionally, plaintiff made comments with regard to the fact that Lester did not involve wrongful death. In point of fact, Lester did involve wrongful death. There were claims for wrongful death in Lester. I was a little bit startled by that. As a result of no evidence being presented regarding discovery, interruption, suspension and additionally the fact that the matter has prescribed on its face and it was not interrupted by Lester as per the reasons I cited in the Fifth Circuit case, I find that the exception of prescription is granted.[13]
The claims of thirty-seven other plaintiffs were dismissed on December 13, 2010 as also being prescribed, with the following reasons therefor stated by the trial judge from the bench:
This is in the matter of Olivia Bailey versus Exxon Mobil, et al., and it is Number 670-803. And today we had numerous exceptions that had been set regarding prescription by numerous plaintiffs. All the prescriptions that are on this docket are subject to the ruling that I am about ready to give in this court on these matters.
112Reasons for judgment: In these exceptions that are before me today, the plaintiffs and the defendants have entered into stipulations. In fact, there are five sets of stipulations that have been filed into this record. They differ minutely as to matters extraneous to the heart of the issue of prescription.
The key is that each stipulation agrees that, quote, “For the purposes of the exception of prescription, the trials of which are set to take place between December the 13th, 2010, and December the 16th, 2010, it is stipulated that plain *173 tiffs had no specific knowledge regarding the actual or potential existence of NORM at any Harvey area pipe yard or facility or any potential exposure to NORM until December the 20th, 2002, when the Warren Lester petition was originally filed,” period, close quote.
Given that stipulation in each of the stipulations that were submitted to the Court and the recognition of the public record as well as the documents submitted, it is clear to me on the face of the pleadings that they are prescribed. Counsel for plaintiff sought to make an argument that this Court could cut its own path and discard the ruling of the Court of Appeal for this circuit.
In essence, while very tantalizing, if total disregard of the superior court ruling was done by each division in the 24th JDC, there would be chaos. Neither the public nor their advocates would be blessed with the certainty of decision. Additionally, the argument presented by plaintiffs appears to be a thrust for a disguised rehearing by the Fifth Circuit. The three cases relied on by the plaintiffs’ counsel in their argument today are distinguishable.
In the case before us today, we have the plaintiffs literally on the record stating why they want nothing to do with the class action suit pending in another jurisdiction. The written language is clear, concise, and ringing.
Therefore, for the reasons given by defense counsel and the reasons outlined in Lester versus Exxon Mobil Corporation, 09-1105, Louisiana Appeals, Fifth Circuit, 6-29-10, this Court finds that the filing of In Re Harvey Term did not suspend prescription for those plaintiffs who filed another suit before a ruling on the class certification in Harvey Term was handed down.
That’s on the face of the pleadings. The suit had prescribed. And plaintiffs failed in their burden to show that the plaintiffs knew or should have known of the claim less than one year from the date of the filing of the Olivia Bailey suit in Jefferson Parish.
Defendants [sic] exceptions of prescription are sustained, and the claims of the plaintiffs before the Court today are dismissed with prejudice.
| isOur review of the correctness of the trial court’s granting of defendants’ exceptions of prescription must begin with the trial court’s finding of fact in its reasons for ruling that the plaintiffs involved in this appeal (the “Bailey 24th JDC plaintiffs”) are “literally on the record” as opting out of participation in and/or the benefits of the In Re Harvey TERM Litigation putative class action, and therefore, they do not receive any of the effects of LSA-C.C.P. art. 596’s suspension of prescription.[14] Based on our thorough review of this matter, we find that the trial court erred in finding that the Bailey 24th JDC plaintiffs opted out of the In Re Harvey TERM Litigation class by filing the Lester CDC suit. The Bailey 24th JDC plaintiffs, who are wrongful death plaintiffs filing claims for the wrongful deaths of their decedents, did not allege the same cause of action as the Lester CDC plaintiffs, who were personal injury plaintiffs filing claims for personal injuries. As this Court has succinctly stated:
The present matter does not involve the direct tort action or the survival action, but instead concerns the wrongful death action provided by La. Civ. *174 Code, Art. 2315.2. It is also now well established that the survival action and the wrongful death action are two different actions which arise at different times. In Taylor v. Giddens, 618 So.2d 834, 840 (La.1993), the court stated:
Although both actions arise from a single tort, survival and wrongful death actions are separate and distinct. Each right arises at a different time and addresses itself to the recovery of damages for totally different injuries and losses. The survival action comes into existence simultaneously with the existence of the tort and is transmitted to beneficiaries upon the victim’s death and permits recovery only for the damages suffered by the victim from the time of injury to the moment of death. It is in the nature of a succession right. On the other hand, the wrongful death action does not arise until the victim dies and it compensates the beneficiaries for their own injuries which they suffer from the moment of the victim’s death and thereafter. Wrongful death damages compensate beneficiaries for their own injuries. (Citations omitted; emphasis added.)
| u Young v. E.D. Bullard Co., 97-657 (La.App. 5 Cir. 11/25/97), 703 So.2d 783, 785, writ denied, 98-0457 (La.11/19/99), 749 So.2d 665.
The cause of action for wrongful death is a statutorily created cause of action that exists in favor of the various classes of beneficiaries listed in LSA-C.C. art. 2315.2. It is clear that a person does not have a cause of action for his own wrongful death. It is undisputed from the record that the Lester CDC plaintiffs sued for their own personal injuries, and the Bailey 2Lth JDC plaintiffs asserted wrongful death causes of actions.
Nor does the Lester CDC plaintiffs’ “opt out” of In re Harvey TERM Litigation by way of filing the Lester CDC suit also operate to “opt out” their Article 2315.2 beneficiaries’ wrongful death causes of action. Because the Lester CDC plaintiffs did not and never had causes of action for their own wrongful deaths, their “opt out” affected only their own personal claims. The Lester CDC plaintiffs (and indeed, any personal injury plaintiff) had no power or right to “opt out” of their beneficiaries ’ causes of action for their wrongful deaths. Accordingly, because the Bailey 2JJh JDC plaintiffs, as wrongful death plaintiffs, did not opt out of In Re Harvey TERM Litigation, we find LSA-C.C.P. art. 596 applicable to this action.[15]
Now, turning specifically to the issue of prescription, we find, as the trial court did, that the Bailey 2Uh JDC petition, filed in March of 2009, was prescribed on its face because all of the decedents had died more than one year prior to suit being filed in 2009. When a claim is prescribed on its face, the burden shifts to the | ^plaintiffs to show suspension or interruption of the prescriptive period,[16] or that the *175 provisions of contra non valentem apply to delay the beginning of the prescriptive period.[17]
Plaintiffs argue that prescription on this suit filed in 2009 was suspended by operation of LSA-C.C.P. art. 596, which provides as follows:
A. Liberative prescription on the claims arising out of the transactions or occurrences described in a petition brought on behalf of a class is suspended on the filing of the petition as to all members of the class as defined or described therein. Prescription which has been suspended as provided herein, begins to run again:
(1) As to any person electing to be excluded from the class, thirty days from the submission of that person’s election form;
(2) As to any person excluded from the class pursuant to Article 592, thirty days after mailing or other delivery or publication of a notice to such person that the class has been restricted or otherwise redefined so as to exclude him; or
(8) As to all members, thirty days after mailing or other delivery or publication of a notice to the class that the action has been dismissed, that the demand for class relief has been stricken pursuant to Article 592, or that the court has denied a motion to certify the class or has vacated a previous order certifying the class.
B. The time periods in Subparagraphs (A)(2) and (3) of this Article commence upon the expiration of the delay for taking an appeal if there is no appeal, or when an appeal becomes final and definitive. The notice required by Subparagraphs (A)(2) and (3)of this Article shall contain a statement of the delay periods provided herein.
The Bailey ¡¾⅜⅞ JDC plaintiffs asserted in their petition that they are putative members of the class described in In Re Harvey TERM Litigation> which included, from the date of those original petitions, claims for both personal injury and wrongful death resulting from exposure to NORM. We find that the class definition in In Re Harvey TERM Litigation included these plaintiffs’ claims.
| ie,The October 25-26, 2010 hearing on prescription
The sixteen plaintiffs whose wrongful death claims were found prescribed at the end of the October 25-26, 2010 hearing were divided into three groups by virtue of their decedents’ dates of death, though we find this grouping immaterial to our analysis.[18] With the exception of Grace Guidry, who did not testify and for whom no stipulation was offered, plaintiffs testified (or stipulations were offered) that plaintiffs first heard of the possibility of the ITCO *176 pipeyard being radioactively contaminated sometime in 2001. One plaintiff (Maxine Harris) testified that she heard “people talking” as early as March of 2001. Others testified that they had heard people talking about it in “late 2001” or possibly in early 2002. This general time frame is a reasonable approximation of notice to these plaintiffs, as the jury verdict in Grefer v. Alpha Technical Services was rendered in May of 2001, which was newsworthy in that the jury awarded compensatory damages and punitive damages of $1 billion to the Grefer landowners for contamination of the ITCO pipe yard property. Pollard CDC was filed on May 28, 2001.
Article 596 suspends the running of prescription prior to the trial court’s ruling on class certification, leaving plaintiffs with only the remaining time left in which to file their claims following the judgment. The concepts of interruption and suspension of prescription are distinguishable. If prescription is interrupted, the time that has run is not counted, and prescription commences to run anew from the last day of the interruption. LSA-C.C. art. 3466. By contrast, if prescription is suspended, the period of suspension is not counted toward the accrual of ^prescription, but the time that has previously run is counted. LSA-C.C. art. 3472. In other words, if the one-year prescriptive period for del-ictual actions is suspended for any reason, the clock merely stops running during the suspension, and thereafter when the suspension is ended, the obligee has only so much of the prescriptive period as was remaining when the suspension began. Eastin v. Entergy Corp., 07-212 (La.App. 5 Cir. 10/16/07), 971 So.2d 374, 381, writ denied, 2007-2214 (La.1/11/08), 972 So.2d 1167.
Accordingly, the time in which prescription begins to run, and when it was suspended, is critical to a determination of whether this suit was timely filed. Given the scant amount of time between plaintiffs’ notice that the ITCO pipe yard had radioactive contamination (mid to late 2001) and the filing of In Re Harvey TERM Litigation in May of 2001, it is obvious that very little of the prescriptive period on these plaintiffs’ claims had elapsed prior to the suspension caused by the filing of In Re Harvey TERM Litigation. This is true as to all sixteen plaintiffs involved in the October 25-26, 2010 hearing.
The next step would normally be for us to calculate exactly how much time these plaintiffs had to file their suit after the trial court’s denial of class certification ruling on April 14, 2008, and if the filing eleven months later on March 16, 2009 was timely, as all of these plaintiffs did not necessarily have the entire thirty days plus one year in which to file suit, given that Article 596 suspends rather than interrupts prescription. However, a recent amendment to Article 596, adding paragraph B, clarifies the matter and makes a further calculation of the remaining time after the suspension ended unnecessary for these plaintiffs. Under LSA-C.C.P. art. 596(B), prescription did not in fact begin to run on plaintiffs’ wrongful death claims until after the appeal of the April 14, 2008 ruling in In Re Harvey TERM Litigation denying class certification was final on |, January 28, 2010. The Comments to Article 596 describe the 2011 amendment as “clarifying” that the time periods in subparagraphs (A)(2) and (3) of this Article do not commence until an appeal of the ruling on class certification becomes final and definitive.[19] The de *177 scribed amendment is therefore interpretive in nature, and may be applied retroactively to facts before its effective date.[20] Accordingly, the tolling of prescription remained suspended during the pendency of the appeal of the class certification ruling in In Re Harvey TERM Litigation.
In light of the clarifying nature of the recent amendment to Article 596, and the fact that it is interpretive in nature and may be applied retroactively to facts before its effective date, we find that this suit filed on March 16, 2009, after the trial court’s April 14, 2008 ruling in In Re Harvey TERM Litigation denying class certification but prior to the finality of that judgment on appeal, is timely filed.[21]
This opinion finding the Bailey 2£th JDC wrongful death claims timely does not, however, overrule this Court’s previous judgment in Lester that found that the wrongful death claims asserted by Mrs. Meerman and Mrs. Gauthreaux and her children in the Clarifying and Amending Petition in Lester prescribed. By filing the Clarifying and Amending Petition in Lester, Mrs. Meerman and Mrs. |1sGauthreaux and her children bound themselves to the “opt out” language found in the original Lester CDC petition and to its original filing date. This result is not changed by this Court’s ruling in Lester that the Clarifying and Amending Petition did not “relate back” to the original petition for the purposes of LSA-C.C.P. art. 1153. That Article’s purpose concerns prescription; it attempts to strike a balance between a plaintiffs right to proceed and the defendant’s right to be free from stale and prescribed claims. Thomas v. Tri-State Foods, L.P., 45,689 (La.App. 2 Cir. 11/3/10), 55 So.3d 117, 120. The fact that a subsequent petition does not relate back for prescription purposes under Article 1153 does not negate the other consequences of the filing, such as the Clarifying and Amending Petition’s language adopting all of the allegations in the prior petitions filed in the case. The other Bai *178 ley 24th JDC plaintiffs, however, are not so bound, having never joined in the Lester suit themselves as wrongful death plaintiffs and having clearly filed their suit after the trial court ruling on class certification in In Re Harvey TERM Litigation.

The December 13, 2010 hearing on prescription

The remaining thirty-seven plaintiffs’ wrongful death claims were challenged by defendants on the basis of prescription in a hearing held on December 13, 2010.[22] Unlike the first sixteen plaintiffs, as noted above in the trial | ^court’s reasons for judgment, plaintiffs and defendants in this flight stipulated that only for purposes of the exceptions of prescription regarding these thirty-seven plaintiffs, these plaintiffs had no specific knowledge regarding the actual or potential existence of NORM at any Harvey area pipe yard or facility or any potential exposure to NORM until December 20, 2002, when the Lester CDC petition was originally filed.[23] Our above analysis as to the other sixteen plaintiffs involved in this appeal is also applicable to these thirty-seven plaintiffs’ claims and the exceptions of prescription asserted against them. Because the parties have stipulated that the “notice” date occurred after the filing date of In Re Harvey TERM Litigation, the commencement of prescription in these claims was suspended by the filing of In Re Harvey TERM Litigation. Therefore, prescription did not begin to run on these plaintiffs’ causes of action for wrongful death until after the April 14, 2008 ruling in In Re Haney TERM Litigation denying class certification became final on appeal. Accordingly, the Bailey 24-th JDC suit filed on March 16, 2009 was timely, and the wrongful death claims of these thirty-seven plaintiffs are also not prescribed.

EXCEPTION OF LIS PENDENS AND MOTION TO DISMISS

Plaintiffs argue that the trial court erred in denying their exception of lis pendens and denying their motion to dismiss this suit without prejudice. Given our ruling above on defendants’ exceptions of prescription, these assignments of error are pretermitted.

\ CONCLUSION

For the reasons stated above, we reverse the trial court’s granting of defendants’ exceptions of prescription. This *179 matter is remanded to the trial court for further proceedings.

REVERSED AND REMANDED

. The terms NORM and TERM are sometimes used interchangeably.

. See Grefer v. Alpha Technical, 02-1237 (La.App. 4 Cir. 3/31/05), 901 So.2d 1117, jdgmt. vacated by Exxon Mobil Corp. v. Grefer, 549 U.S. 1249, 127 S.Ct. 1371, 167 L.Ed.2d 156 (2007), on remand, 02-1237 (La.App. 4 Cir. 8/8/07), 965 So.2d 511, writ denied, 07-1800 (La. 11/16/07), 967 So.2d 523, cert. denied, 553 U.S. 1014, 128 S.Ct. 2054, 170 L.Ed.2d 810 (2008). The plaintiffs in the Grefer lawsuit filed suit as landowners in August 1997 against Exxon Mobil and ITCO to recover damages for the contamination of a 33-acre tract of land with radioactive material. This land was where ITCO operated its pipe yard where plaintiffs in the present case worked. After a five-week trial, the jury returned a verdict in favor of the Grefers and awarded them damages in the amount of $56,145,000, which included $145,000.00 in general damages and $56,000,000 in restoration costs, as well as punitive damages in the amount of one billion dollars. The award was initially affirmed by the Fourth Circuit, but later vacated by the United States Supreme Court. On remand, the Fourth Circuit amended the award to reduce the $1 billion award for punitive damages to $112,290,000.

. Leo Pollard, Jr., et al. v. Alpha Technical Services, Inc., et at., No. 01-8707, Civil District Court, Parish of Orleans, Louisiana.

. In re: Harvey TERM, No. 01-8708, Civil District Court, Parish of Orleans, Louisiana, and consolidated cases: Leo Pollard, Jr., et al. *170 v. Alpha Technical Services, Inc., et al., No. 01-8707; Glenda Bailey, et al. v. Exxon Mobil Corporation, et al., No. 01-8926; James A. Williams, et al. v. Exxon Mobil Corporation, et al., No. 01-8959; Odile Gordon, et al. v. Exxon Mobil Corporation, et al., No. 01-14101; Jo Ann B. Grigsby, et al. v. Joseph Grefer, et al., No. 01-16364; Willie Williams, et al. v. Exxon Mobil Cotporation, et al., No. 01-18230; Ida Rose Wilson, et al. v. Exxon Mobil Corporation, et al., No. 01-19533; John H. Cotton, et al. v. Exxon Mobil Corporation, et al., No. 01-19938; and Phil Burras, et al. v. Exxon Mobil corporation, et al., No. 02-644.

. Lester v. ExxonMobil, et al, No. 2002-19657, Civil District Court, Parish of Orleans, Louisiana.

. 09-1105 (La.App. 5 Cir. 6/29/10), 42 So.3d 1071, writ denied, 10-2244 (La. 12/17/10), 51 So.3d 14.

. Though not mentioned in the opinion of this Court, it is specifically noted that in Lester, the plaintiffs also affirmatively stated in their petition (paragraphs XXIV and XXV) that they repudiated any participation in the other pending class action suits involving NORM *171 exposure and would in fact opt out of participation in those suits if sent claim forms.

. Giroir v. South Louisiana Medical Center, Div. of Hospitals, 475 So.2d 1040 (La.1985).

. Olivia Bailey et al v. ExxonMobil Corp. et al, No. 2009-1973, Civil District Court, Parish of Orleans, Louisiana.

. Olivia Bailey et al v. ExxonMobil Corp. et al, No. 670-803, 24th Judicial District Court, Parish of Jefferson, State of Louisiana.

. Pollard v. Alpha Technical, 08-1486 (La.App. 4 Cir. 1/28/10), 31 So.3d 576.

. The Bailey 24th JDC plaintiffs (and their decedents) who have judgments on appeal here are, from the judgments rendered on October 25-26, 2010: Grace Guidry (Raymond J. Guidry), Hayes Lepine (Ruth Lepine), Cheryl Nicolas (Calvin R. Nicolas), Maxine Harris (Damion Harris, John Q. Harris, and Rosie Paige), Stacy Ruffin (Genevia T. Marshall), Dwayne Williams (Raniere M. Williams), Joe Paige (Ruby Paige), Janice Toups (Raoul Toups), Montreal Matthews (Richard Matthews Jr.), Marion Burks (Yvette Burks), Linda Dillon (Francis Smith Mends), Michelina Brown Hogan (William Brown), Rebekah Paine (Charles S. Paine III), and Larry Duhon (Nola Toups).

. These reasons for judgment were for the ruling finding the claims of Grace Guidry (Raymond J. Guidry) prescribed. These reasons are representative of the reasons for ruling on the other fifteen plaintiffs’ claims.

. Our review of the record shows that the trial court's conclusion regarding the Bailey plaintiffs being "on the record” applies to both the judgments rendered on October 25-26, 2010 and the judgments rendered on December 13, 2010.

. At the hearing on October 25-26, 2010, it was shown that several of the Bailey 24th JDC wrongful death plaintiffs were themselves plaintiffs in Lester CDC. It was clear that some appeared for their own personal injuries. It was suggested that others appeared as wrongful death plaintiffs in Lester CDC because both they and their decedents were listed as Lester CDC plaintiffs. However, as this Court made clear in Lester, the original petitions involved in Lester contained no factual allegations regarding wrongful death claims. Accordingly, despite the fact that many of the current Bailey 24th JDC plaintiffs and their decedents were listed in Lester CDC as plaintiffs, we find that none of the Bailey 24th JDC plaintiffs here appeared as wrongful death plaintiffs in Lester.

. Younger v. Marshall Indus., Inc., 618 So.2d 866, 869 (La.1993).

. Eastin v. Entergy Corp., 2003-1030 (La.2/6/04), 865 So.2d 49.

. Plaintiffs whose decedents died more than one year prior to the filing of the first suit (Pollard CDC, filed on May 23, 2001) that became In Re Harvey TERM Litigation are Janice Toups (Raoul Toups), Maxine Harris (John Q. Harris, Damion Harris, and Rosie Paige), Montreal Matthews (Richard Matthews), Joe Paige (Ruby Paige), Michelina Brown (William Brown), Rebekah Paine (Charles S. Paine III), and Marion Burks (Yvette Burks). Plaintiffs whose decedents died between that date and the filing of Lester CDC are Cheryl Nicolas (Calvin Nicolas) and Larry Duhon (Ñola M. Toups). Plaintiffs whose decedents died after Lester CDC was filed on December 20, 2002 are Hayes Lepine (Ruth Lepine), Dwayne Williams (Raniere M. Williams), Linda Dillon (Francis Smith Mends), Grace Guidry (Raymond J. Guidry), and Stacy Ruffin (Genevia T. Marshall).

. The Comments to the 2011 amendment to Article 596 are as follows:
fy) Article 596 was amended by the addition of Paragraph B to clarify that the com *177 mencement of the thirty day periods provided in Subparagraphs (A)(2) and (3) are suspended by the delays applicable to an appeal from the judgment ruling on class certification.
(b) Read literally the prior version of Article 596 gave putative class members receiving notice of the court’s denial of certification of their membership in a class action a thirty-day period, commencing upon notice of the judgment, during which prescription applicable to filing individual suits continued to be suspended.
(c) The provision created confusion because Article 592(A)(3)(h) authorizes an appeal from a judgment denying certification and Article 596 does not provide that its thirty-day suspensive periods are subject to further suspension by the articles on appeal. Given this uncertainty, a cautious plaintiff's attorney receiving notice of an adverse ruling on class certification might needlessly file an individual suit for his client during the period for taking or completing an appeal to avoid a possible prescription exception.
ló) The amendment adding Paragraph (B) to Article 596 clarifies that its thirty-day suspensive periods do not run during the delays applicable to taking or completing an appeal. It also requires the trial court to include in the notice specified in Subpar-agraphs (A)(2) and (3) a statement of the delay periods provided in this Article.

. When an existing law is not clear, a subsequent statute clarifying or explaining the law may be regarded as interpretive, and the interpretive statute may be given retrospective effect because it does not change, but merely clarifies, pre-existing law. St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 817 (La.1992).

. We specifically decline to hold that the filing of the Bailey 24th JDC suit prior to a final ruling on the appeal of the class ruling is equivalent to the filing of a separate suit prior to the trial court’s ruling on class certification, i.e., an effective "opt out” such as what has been deemed to have occurred in Lester.

. Elvira Aguilard (Ernest C. Aguilard), Betty Arcement (Julien J. Arcement, Jr.), Genece Baker (Joseph Thomas Baker), Harold Bowie (Clarence S. Bowie), Quinton Clark (Wade Bethley), Patrice R. Clofer (James H. Rous-sell), Grace Coursey (Roger Coursey, Sr., incorrectly named as Robert Coursey), Virginia Dimarco (Leslie W. Mead), Mary Bradley Doris (Andrew J. Doris), Janel Edwards (Albert Williams), Porter Edwards, Jr., (Porter Edwards), Joan Haas Folse (Lloyd J. Folse), Francene LeBlanc Gary (Joseph W. LeBlanc, Sr.); Rose Lee W. Gaston (Rayfield Gaston, Jr.), Wynesta R. Gaston (Sherman Gaston), Sharon Gauthreaux (Earl Gauthreaux), Joyce A. George of Clarence George, JL; Wayne Guidry Tilman A. Guidry; Leontine Harris Freddie Harris; Sharon Whelan Hill (Arlen A. Whelan), Shirley Jackson (H.L. Jackson), Joy-celyn J. Johnson, incorrectly named as Joyce J. Johnson (Jessie Johnson, Jr.), Hermina McCallon (Robert McCall), Valerie Morton (Enoble Morton, Jr., incorrectly named as Noble Morton, Jr.), Amelia Simoneaux Paugh (Marvin R. Paugh), Linda Price (Gary J. Price, incorrectly named as Gary I. Price and Gary L. Price), Edna Raymond (Frank Raymond, Jr.), Karen Rodrigue (Felix Alexie, Sr.), Myrtle Shields (James Jackson), Carla Simmons (Morris Frank, incorrectly named as Frank Morris), Betty Smalls (Aubrey B. Smalls), Kim Tran (Tong B. Tran), Willie Mae Valet (LeRoy Valet), Keion Walker (William Walker, Sr.), Carol Walters (Paris J. Dardar, incorrectly named as Paris T. Dardar), Rosetta McGee Williams (Jimmie McGee), and Rose Wilson (Fred Wilson, Jr.).

. See the rulings from the bench, quoted above.